413 So.2d 257 (1982)
Aaron V. GREEN
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 12871.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1982.
*258 Roger J. Larue, Jr., Metairie, for plaintiff-appellant.
David R. Richardson, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant-appellees.
Before REDMANN, BYRNES and GARRISON, JJ.
BYRNES, Judge.
This is an appeal from a trial court ruling denying workers compensation to appellant. The appellant claims that an injury to his neck from an accident unrelated to his work was aggravated by the constant turning of his head while in the course and scope of his employment as a bus driver. We, as did the trial judge, do not agree and therefore we affirm the trial court's decision denying compensation benefits.
We are not in the position of the trial court when reviewing a "cold" record to ascertain the demeanor of parties and as such, great weight must be given to the trial judge's impressions as supported by the record.[1] We feel that the trial judge's reason for judgment reflect a demeanor absent from the record before us and include his reasons for judgment here insofar as they are very helpful in setting the tone of trial court proceedings and also since we feel that this court must not take lightly our responsibility when denying workmen's compensation benefits to an injured worker. After a careful review of the record we cannot disagree with the trial court judge and therefore we accept his findings of fact and reasons for judgment and so include them in this opinion.
"The plaintiff, at the time of the trial, was a 38 year old male, with a child. He began working for New Orleans Public Service, Inc. in 1970, at which time he filled in a pre-employment application. He was employed as a bus driver. In April and December, 1975, he was involved in off-duty automobile accidents, for which he filed law suits, alleging neck and cervical injuries. In 1966, while in Viet Nam, he sustained a knee injury for which he has been collecting a 10% disability pension. He did not reveal this fact to New Orleans Public Service, Inc. when he applied for his job. He partially relied on his knee condition in this case for workmen's compensation, and this is almost a side issue. The reason is obvious; while working in New Orleans Public Service, Inc., he tried to have his knee disability medically increased and then was denied by the Veterans Administration, which allegedly found no substantial change in his knee. But he was being treated, off and on for his knee problem since before he went to work for New Orleans Public Service, Inc. His principal physician has been Dr. Whitecloud, an orthopedic specialist. Dr. Whitecloud has never examined or treated him for his knee. His testimony is, he knows his knee is worse, but he can't prove it. The doctors treating his knee at the Veterans Administration hospital don't agree with him, and neither does the court."
"The medical evidence is that this man has had a significantly deteriorated cervical disc. He has a severe osteo-arthritic condition of which the doctors say that it is impossible to determine when it began. Further, his job activity has nothing to do with that condition; does not aggravate or worsen the condition. However, the job activity increases the "sympton complex". Turning his head back and forth in the operation of his bus might cause some pain and discomfort, but that would be all! In 1970, Dr. Whitecloud said: `He is a pretty young man to have had the degeneration he had.' No one can say or even intimate that this man sustained any work-related accident."
"On the occasions on which he was injured in automobile accidents, he collected *259 for cervical injuries, and he also received sick pay. On each occasion, he was off work for months. He collected sick pay benefits for December, 1978 until June, 1979 when he was terminated. To be able to do so he had to certify to the insurance carrier that his illness was not work-related, which he did. Now, having collected the maximum sick leave benefits, he reverses his position and says his condition, his illness is work-related, for which he is due workmen's compensation benefits. He claims that being required to turn his head while driving a bus causes his pain symptoms to be more severe."
"He has had a horrible work record, having missed 600 days of work between 1970 and 1979, for non-work related accidental injuries, nose bleeds, toothaches, colds, flu, loose bowels, etc. When he could no longer operate a bus, New Orleans Public Service, Inc., offered him another job in stores, which would be lighter work. He refused to accept it, because it meant two things: (1) a decrease in pay and (2) loss of seniority because he would be required to enter the new job at an entry level."
"The court observed that the plaintiff did not adequately explain away any "tight situation" or unfavorable position he found himself in. He dodged questions. He circumvented issues, and his answers to `tight unfavorable questions' were less than the whole truth, were seldom direct answers. On other occasions, in his testimony in brief, he was fully cooperative, understanding, direct and able to respond without difficulty. But on cross-examination, the moment that he sensed that a truthful answer might be harmful to his cause, it was a different story."
"From the evidence taken as a whole, the court concludes that all this plaintiff needed to collect workmen's compensation was the passage of time. His progressive, severe, degenerative spinal disease is in no way related to his work. In fact, his own testimony is that his condition has gotten worse since he stopped working. It is clear from the evidence that his work did not cause his condition. It is also clear that his work did not aggravate his condition. It is just as clear that he sustained no trauma or accident per se on his job. The best that can be said for him is that he had painful symptoms, and that his work made his symptoms more painful."
"To hold the defendant employer liable for workmen's compensation in this case would be tantamount to making New Orleans Public Service, Inc., the health insurer of its employees. I find this case no different from any of the following:
(a) A bus driver asking for compensation because sitting down caused his hemorrhoids to become more painful.
(b) A bus driver (or any other employee) saying he cannot work outside or in a well-lighted office because the glare hurt his glaucoma.
(c) All laborers or outside workmen saying they cannot work on nice, clear, dry, warm, sunshiny, days because the infra-red rays of the sun caused them to get skin cancer, etc."
"There will be judgment herein in favor of the defendant, dismissing plaintiff's suit."
The issue raised by plaintiff on appeal to which we now address ourselves is whether pain caused by work is sufficient to bring one within the scope of the worker's compensation act, not withstanding the fact that the underlying condition is totally unrelated to and not aggravated by one's work.
The law is well settled in Louisiana in that if a worker is afflicted with a pre-existing condition which in its ordinary course may have produced disability he is nevertheless entitled to workers compensation benefits if a work related accident brings about disabling consequences. See Allor v. Belden, 393 So.2d 1233 (La. 1981); E. G. Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (La.App. 3rd Cir. 1975); Jones v. Douglas Public Service, 264 So.2d 267 (La.App. 4th Cir. 1972); Lum v. Employers Mutual Liability Insurance Company *260 of Wisconsin, 216 So.2d 889 (La.App. 2nd Cir. 1968).
The key questions presenting themselves to this court are whether the turning of the bus driver's head in the course and scope of his employment constitutes a work related accident and whether or not the preexisting condition was aggravated or was the aggravation merely of symptomatic origin.
The jurisprudence in Louisiana states that an accident may be either a single trauma or many insignificant instances which cumulatively result in disability. It has been held that a worker subjected to severe temperature changes as many as a hundred and fifty (150) times per day was entitled to compensation because of his disability resulting in the many "accidents" with the court defining each temperature change as a separate accident. See Gales v. Great Atlantic & Pacific Tea Co., 342 So.2d 241 (La.App. 4th Cir. 1977), Writ refused, 343 So.2d 1077. While the turning of the bus driver's neck during the course and scope of his employment can no doubt be considered a condition of his employment as a bus driver which could conceivably aggravate the preexisting condition, this court is unwilling to carry the rationale of Gales to this extreme. If we were to do so, every act of a worker while in the course and scope of employment, no matter how insignificant, could purport to aggravate a preexisting condition, thus making the employer the absolute insurer of his employees' safety. We feel this is a disproportionate burden placed on the employer, one not so intended by the drafters of our worker's compensation act.
There is ample testimony in the record to lead this court to conclude that the pain resulting from the turning of the neck was symptomatic and not related to any further deterioration of the cervical trauma suffered by the appellant. This court recognizes that in the case where pain in and of itself has been held to constitute a compensable injury, this pain has invariably resulted from a deterioration of a preexisting condition. In the instant case, there is no evidence of any said deterioration. On the contrary, there is testimony to the effect that the neck injury got progressively worse even after the appellant was discharged from his job.
We therefore affirm the trial court's decision rendered January 29, 1981 and assess all costs of this appeal to appellant.
AFFIRMED.
NOTES
[1] Canter v. Koehring Co., 283 So.2d 716 (La. 1973)