430 So.2d 1263 (1983)
John CELESTIN
v.
FIREMAN'S FUND INSURANCE COMPANY.
No. 82 CA 0803.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
*1264 Melvin G. Ripp, Jr., New Orleans, for plaintiff and appellee.
Charles Hanemann, Houma, for defendant and appellant.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
The primary issue in this workers' compensation case is whether or not plaintiff's *1265 work-related accident caused the cervical and lumbar injuries from which he allegedly suffers.
The trial court found the injuries to be compatible with the type of accident which occurred, and held plaintiff to be totally and permanently disabled. Additionally, plaintiff was awarded penalties and attorney fees. The defendant, Fireman's Fund Insurance Company, has appealed.
On August 29, 1980, plaintiff was allegedly injured in the course and scope of his employment with the Terrebonne Parish School Board. Plaintiff was employed in a dual capacity with the School Board. He drove a school bus in the morning and afternoon, and during the school day he drove a food truck in which he delivered food to schools that have no cafeterias. The food was delivered in large food warmers which weigh approximately five hundred pounds. Plaintiff normally handled the food warmers by rolling them on their wheels to and from the truck, which was equipped with a lift gate. However, since the lift gate was never level with the surface upon which the food warmer rolled, it was necessary for the plaintiff to lift the warmer upward so that the wheels of the warmer could be placed on the lift gate of the truck.
On the date of the alleged injury, plaintiff claims he felt a tearing sensation in his lower back and stomach and a stinging sensation in his neck while performing the lifting maneuver. Plaintiff thereafter completed his work day. At the end of the day, however, plaintiff reported his accident to the School Board's secretary, Miss Susan Rome. Miss Rome suggested that plaintiff see a doctor, and the following Monday after the Friday event plaintiff saw his personal physician, Dr. Samuel C. Collins.
According to Dr. Collins, plaintiff complained only of pain in the right inguinal region on his initial visit September 2, 1980, as he did on subsequent visits October 3, October 13, November 3, and November 24. Dr. Collins stated the plaintiff did not complain of back pain until December 22, 1980. Prior to this date, however, plaintiff had been referred to Dr. Peter Rhymes, an orthopedic surgeon, for an examination. When plaintiff first saw Dr. Rhymes on December 19, 1980, he complained only of groin pain, according to Dr. Rhymes. Dr. Rhymes at this time detected some early degenerative changes in plaintiff's low back area in a radiograph, but he felt they were insignificant. Dr. Rhymes referred plaintiff to Dr. Patrick Carmody, a general surgeon, to check for an inguinal hernia.
Dr. Rhymes again saw the plaintiff on January 7, 1981, at which time plaintiff was still complaining of inguinal pain, but the pain had now begun to radiate up into his back and down to his right leg. Dr. Carmody examined plaintiff the next day, January 8, 1981, but was unable to find a hernia or any other abnormality to explain the inguinal pain. On February 2, plaintiff returned to Dr. Rhymes with numbness and pain in his left hand and in both legs. Dr. Rhymes then performed a vertical loading test, which entailed basically putting pressure on the top of plaintiff's head. The test was positive, indicating possible cervical problems. Dr. Rhymes therefore suggested a CT scan.
On February 11, 1981, Fireman's Fund wrote Dr. Rhymes stating they would not be responsible for the payment of the CT scan. Because plaintiff had not complained of neck and back injuries until months after the accident, Fireman's Fund took the position these problems were not a result of the employment accident and further treatment should be billed to plaintiff personally. The CT scan had already been performed, however, on February 9, 1981, before this letter was received. According to Dr. Rhymes, the CT scan indicated the lumbar area was normal, but possible disc herniation was indicated in the C-5, C-6 level of the cervical spine. Dr. Rhymes sent Fireman's Fund a copy of the CT scan report and advised them that plaintiff needed neurosurgical consultation for his neck problems and that plaintiff's pain in the inguinal area could be related to a possible lumbar sprain.
*1266 As of February 23, 1981, Dr. Rhymes directed plaintiff not to return as a driver of a food truck for the School Board. However, plaintiff continued to drive a school bus through the end of the 1980-1981 school year as a result of a misunderstanding between himself and Dr. Rhymes, who apparently did not understand the dual nature of plaintiff's employment. Dr. Rhymes testified that he had meant plaintiff should not work as a driver at all as of February 23, 1981.
On February 16, 1981, Dr. Rhymes referred plaintiff to Dr. John Jackson for a neurosurgical evaluation. Dr. Jackson's neurological examination on March 19, 1981 revealed no evidence of a pinched nerve or ruptured disc in plaintiff's neck. However, plaintiff continued to have pain in his lumbar area, in his legs, and in his left hand, though he had no further complaints of inguinal pain after February or March. Dr. Rhymes first detected muscle spasms in plaintiff's lumbar area on June 8, 1981. Because of these spasms, Dr. Rhymes felt plaintiff needed a myelogram. However, when plaintiff attempted to have the myelogram performed, the Terrebonne Parish General Hospital refused to admit him without a cash downpayment because his bill for the CT scan had not been paid. Since plaintiff could not afford the myelogram and because defendant refused to pay for it, it was never performed. Meanwhile, plaintiff's condition continued to deteriorate. By July 27, 1981, Dr. Rhymes felt plaintiff was suffering from a chronic lumbrosacral sprain. Dr. Rhymes also felt plaintiff had some type of nerve root irritation or nerve root compression in the cervical area which was causing the pain in his neck and left hand. Despite plaintiff's increasing symtomology, the defendant refused to pay further medical benefits and in May 1981 it terminated the compensation payments it had been paying on the basis of plaintiff's groin injury. Plaintiff filed suit on May 22, after the compensation benefits were terminated.
Though no one was present when plaintiff was injured on August 29, 1980, there is little doubt that plaintiff suffered a workrelated accident on that date and he was thereafter initially disabled due to a groin injury. Defendant recognized this fact by paying compensation benefits through May 1981. However, defendant on appeal alleges the trial court erred in holding them responsible for plaintiff's total and permanent disability, since if any such disability exists, it was not the result of the employment accident. The defendant also alleges the trial court erred in awarding penalties and attorney fees because of its termination of benefits.
The plaintiff's burden of proof in a case such as this was recently delineated by the Louisiana Supreme Court in Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829, 831 (La.1982):
"The plaintiff-employee in a workmen's compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981); Lucas v. Insurance Company of North America, 342 So.2d 591, 595 (La.1977). `... Furthermore, medical testimony "must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability"...' Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982).
"A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition *1267 appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Allor v. Belden Corp., supra at 1236; Lindsey v. H.A. Lott, Inc., 387 So.2d 1091, 1092 (La.1980); Lucas v. Insurance Company of North America, supra at 596; Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 1146, 221 So.2d 816, 827-28 (1969). This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. Allor v. Belden Corp., supra at 1236."
In the present case, the testimony is clear that plaintiff was in good health prior to the employment accident. However, there was conflicting testimony as to when the symptoms of the disabling condition began to manifest themselves. Plaintiff claims he experienced pain in his neck and lower back, as well as in the groin area, from the very instant in which he was injured. He claims he told Miss Rome, the School Board secretary; Dr. Collins, the first treating physician; and Dr. Rhymes, the orthopedist, that from the very outset he had a tearing sensation in his lower back and a stinging sensation in the back of his neck. However, all of these people testified plaintiff complained initially of inguinal pain only, a condition which had cleared up by February or March of 1981 according to Dr. Rhymes. Dr. Collins asserted plaintiff first complained of back pain on December 22, 1980. Dr. Rhymes testified plaintiff first complained of back problems on January 7, 1981. Miss Rome, who took plaintiff's accident report, testified plaintiff reported only abdominal pain on the day of the accident and made his other complaints in the spring of 1981. We must therefore conclude the preponderance of the evidence establishes the symptoms of the conditions, which are now alleged to be disabling, did not commence with the accident. Thus, plaintiff is not entitled to a presumption of causation so as to shift the burden of proof to the defendant to show the accident did not result in the disability.
When asked to explain the cause of plaintiff's condition, Dr. Rhymes opined that plaintiff had a degenerative condition in his low back which was probably aggravated by the accident in August 1980 and which may have been further aggravated by plaintiff's continued work through June 1981. However, Dr. Rhymes also testified he did not believe plaintiff's cervical problems were related to the August 1980 accident since plaintiff did not complain of neck pain until February 1981. However, in response to a hypothetical question which assumed neck pain was felt immediately after the lifting accident, Dr. Rhymes stated the cervical complaints might then be related to such a lifting accident. Defendants have correctly pointed out that this hypothetical question did not reflect the established facts of the case, and therefore Dr. Rhymes' opinion in response to it should be given no probative value. See Prejean v. Trinity Universal Insurance Company, 210 So.2d 395 (La.App. 3d Cir.1968), writ refused, 252 La. 476, 211 So.2d 334 (1968).
Dr. Rhymes further opined that plaintiff's low back problems are probably not enough to disable plaintiff alone, but that plaintiff is definitely disabled when the back, cervical, and hand problems are all combined.
In order for plaintiff to prevail, he was only required to prove the accident was a substantial factor in causing his disability. "It is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor." Parks v. Insurance Co. of North America, 340 So.2d 276, 281 (La.1976); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969). We must therefore conclude the trial judge was not clearly wrong in finding the employment accident *1268 a substantial factor in causing plaintiff's disability, since the evidence disclosed plaintiff's back problem was probably caused by the accident and since plaintiff's back problem is at least a contributing factor in his overall disabled condition.
We next address the extent of plaintiff's disability. At the time of the November 5, 1981 trial, plaintiff had been undergoing physical therapy and wearing a lumbrosacral support belt since June 8, 1981. In September 1981 he was given a cane to assist his walking due to pain in his right leg. He has been on various pain medication and anti-inflammatory agents to relieve inflammation, swelling, and irritation in his back. He has had to sleep on the floor due to back pain. Dr. Rhymes had initially given plaintiff permission to resume driving a school bus as of September 1, 1981, but only if he could get a bus with power steering and brakes. Mr. Stoufflet, plaintiff's supervisor, testified he was unable to successfully schedule such a vehicle, so plaintiff was unable to resume work in September 1981. However, due to plaintiff's increasing symtomology, Dr. Rhymes testified at trial that the plaintiff should not do any work at all until a myelogram is performed, since the tests given so far have been unable to adequately explain his pain and discomfort.
Considering both the lay and medical testimony in the record, we cannot say the trial court was clearly wrong in concluding the plaintiff is totally disabled. Since the doctors have not found a conclusive cause of plaintiff's substantial pain, and since there is some evidence which indicates plaintiff's back condition was aggravated by his continued work as a school bus driver, we feel Dr. Rhymes was correct in concluding plaintiff should perform no work until further medical tests are performed. Under these circumstances, plaintiff is presently disabled from performing work of any reasonable character. Nor was the trial court clearly wrong in holding the plaintiff to be permanently disabled. If a claimant is totally disabled at trial and the duration of the disability is indefinite or the evidence does not clearly indicate the duration of the disability, a judgment for total and permanent disability should be made, subject to modification pursuant to La.R.S. 23:1331. See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Fredericks v. Associated Indem. Corp., 401 So.2d 575 (La.App. 3d Cir.1981).
Defendant also contends it was not arbitrary and capricious in discontinuing plaintiff's compensation payments in May 1981. An employer's conduct in discontinuing workers' compensation and medical payments must be judged primarily upon the facts existing and known to him at the time the payments were stopped. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La.App. 3d Cir.1982), writ denied, 412 So.2d 85 (La.1982). The employer or its insurer must make a reasonable effort to ascertain the plaintiff's exact condition at the time when the benefits are terminated. Discontinuance will then be justified only if the defendant can produce authoritative findings showing the injured employee has healed from the injuries for which he claims disability. Likewise, discontinuance is justified, and no penalties and attorney fees are due, if there is a valid dispute as to the cause of the claimant's disability. Johnson v. State Farm Mut. Auto Ins. Co., 342 So.2d 664 (La.1977).
Defendant was without doubt arbitrary in its discontinuance of medical payments as early as February of 1981, despite the advice of Dr. Rhymes at that time that plaintiff possibly had a lumbar sprain as a result of the accident and that he needed further neurological examination. Because of defendant's refusal to pay for plaintiff's CT scan, the Terrebonne Parish General Hospital refused to admit plaintiff for a myelogram without a cash downpayment. At trial, the exact cause of plaintiff's pain remained a mystery as a result of plaintiff's *1269 inability to have necessary medical examinations performed.
When the compensation benefits were terminated in May 1981, the defendant relied in part on Dr. Jackson's "completely normal" neurological report of April 16. However, later medical reports by Dr. Rhymes indicated that plaintiff remained disabled. In such a case, the insurer cannot blindly rely on the earlier medical report and solely on the basis of that report avoid penalties and attorney fees. See Walker v. Gaines P. Wilson & Son, Inc., supra. Though plaintiff's disability was now related to cervical and lumbar problems, rather than the inguinal pain for which he was initially treated, Dr. Rhymes indicated that his treatments were still necessary due to the employment accident. We therefore affirm the award of penalties and attorney fees, since the facts known to defendant at the time the benefits were terminated did not justify discontinuance.
We finally address plaintiff's request for additional attorney fees for time spent on this appeal. This request, which was made in plaintiff's brief, may not be considered by this court, as plaintiff did not appeal or answer the appeal. La.Code Civ.P. art. 2133; Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App. 2d Cir.1981); Hills v. Travelers Insurance Co., 250 So.2d 551 (La.App. 1st Cir.1971).
For the reasons assigned, the judgment appealed from is affirmed. Defendant is to pay the costs of the appeal.
AFFIRMED.