475 So.2d 80 (1985)
Becky MALLOY, Plaintiff-Appellee,
v.
AT & T CONSUMER PRODUCTS, a DIVISION OF AT & T TECHNOLOGIES, INC., Defendant-Appellant.
No. 17102-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Rehearing Denied September 20, 1985.
*81 David Paul Wilson, Shreveport, for plaintiff-appellee.
Tucker, Jeter & Jackson by James C. McMichael, Jr., Shreveport, for defendant-appellant.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiff, Becky Malloy, instituted this action seeking worker's compensation benefits, penalties and attorney's fees from her employer, AT & T Consumer Products, a division of AT & T Technologies, Inc., formerly Western Electric. Plaintiff alleged that she suffered an accident which either caused or aggravated a pre-existing cervical disc condition while employed at appellant's Shreveport plant as a keypunch operator. The trial court found that plaintiff had suffered an accident within the meaning of the Louisiana worker's compensation act and awarded her benefits for partial disability, while denying her claim for penalties, interest and attorney's fees. Her employer appeals. We affirm.
Becky Malloy was employed at appellant's Shreveport plant in 1978 and worked there as a keypunch operator until December, 1981. During that time, she developed neck and shoulder pain and was unable to work from December, 1981 through February, 1982. Her problems were classified by the Western Electric medical department as unrelated to her work and she received sickness disability benefits during her absence.
Her condition was diagnosed at that time by her treating physician, Shreveport neurologist, Dr. Marco Ramos, as cervical strain with radiculopathy involving the C-5 and C-6 nerve roots. In February, 1982, at the recommendation of Dr. Ramos, Mrs. Malloy returned to the keypunch job and worked without problems there until she was promoted to the position of payroll clerk in June, 1982. In March, 1983, labor conditions at the plant caused defendant to be returned to her previous job as a keypunch operator.
Mrs. Malloy testified that once she resumed her keypunching activity, she again experienced the same type of pain that she had experienced in December, 1981, and that she attributed the pain to the fixed position in which she was required to hold her head while keypunching.
On March 16, 1983, appellee sought treatment again from Dr. Ramos. He advised her not to work and prescribed the same sort of pain medications and physical therapy which he had previously prescribed. He authorized her return to work on April 25, 1983, but restricted her from heavy pushing, lifting, bending, stooping or working above shoulder level. Mrs. Malloy was once again seen by Dr. Ramos on November 10, 1983. At this examination, plaintiff complained of minor discomfort, but told the doctor that she could tolerate the pain and needed to return to work for fear that her marriage would break up and she would have no way to support herself or her children. In that light, he authorized her return to work on November 11, 1983 and wrote a statement to the effect that the patient "remains asymptomatic and is able to perform her duties at work without limitation or discomfort whatsoever." Notwithstanding, Dr. Ramos testified that although he had made the written statement, he had a verbal understanding with appellant's medical director, Dr. Charles Myers, that if at all possible, Mrs. Malloy should go back to some other job than keypunching.
Although Dr. Ramos authorized her return to work, appellant did not do so because Dr. Myers continued certain working restrictions he had previously imposed, and apparently no work could be found for her at the plant with these limitations.
Dr. Ramos saw Mrs. Malloy again on February 25, 1984 when she continued to complain of increased pain. Her condition was summarized by Dr. Ramos as a cervical strain with nerve root irritation. Dr. *82 Ramos described the symptoms of her condition as chronic, with intermittent periods of pain. Dr. Ramos opined that appellee's pain in March, 1983 was caused by her keypunch job and stated that if she went back to the keypunch job, it might cause her pain again.
Plaintiff testified that she currently suffers pain in her neck, arms, and across her shoulders. Additionally, she has numbness in both of her arms. She stated that she cannot use a vacuum cleaner or mop, and can only sweep for a short period of time. Plaintiff stated that she can lift no heavy objects including her child or go dancing. She testified that her neck will lock if she holds it in a stationary position for an extended period of time, such as at a movie, at church, in front of the television, or riding in a car. Plaintiff stated that she primarily takes B.C. powders and Tylenol for the pain, reserving the prescription drugs for more serious pain attacks. Plaintiff also testified that she sleeps with a heating pad.
Appellant contends that the evidence shows that plaintiff's job as a keypunch operator neither caused nor aggravated her chronic cervical problems. Defendant asserts that plaintiff has a pre-existing degenerative cervical condition which has gradually worsened during a period of years. Appellant posits that Mrs. Malloy's keypunch job caused her neck condition to become symptomatic but did not cause any increased disability in her neck, nor did it cause her neck condition to worsen.
The trial court found that the evidence was unclear as to whether there was an aggravation of a pre-existing condition or whether plaintiff's employment as a keypunch operator was the original cause of the cervical degeneration. However, the trial court found that plaintiff's activities as a keypunch operator either caused the original condition or aggravated the pre-existing condition; therefore, the court concluded that there was sufficient evidence that plaintiff suffered an accident within the meaning of the worker's compensation act entitling her to compensation benefits. Accordingly, the trial court awarded benefits in an amount stipulated to by the parties.
The law is well settled in Louisiana that if a worker is afflicted with a pre-existing condition which in its ordinary course may have produced disability, he is nevertheless entitled to worker's compensation benefits if a work related accident brings about disabling consequences. See Allor v. Belden Corporation, 393 So.2d 1233 (La. 1981); Green v. New Orleans Public Service, Inc., 413 So.2d 257 (La.App. 4th Cir. 1982); Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (La.App. 3d Cir.1975); Jones v. Douglas Public Service, 264 So.2d 267 (La.App. 4th Cir.1972); Lum v. Employer's Mutual Liability Insurance Company of Wisconsin, 216 So.2d 889 (La.App. 2d Cir.1968), writ denied, 253 La. 642, 219 So.2d 175 (1969).
In McCoy v. Kroger Company, 431 So.2d 824 (La.App. 2d Cir.1983), this Court noted that the current jurisprudential definition is such that an "accident" has occurred within the meaning of the compensation act where the conditions of employment provide continual strain or trauma, or exposure, and these events cumulatively combine to aggravate a pre-existing condition so as to disable the employeeeven though each individual event in itself is very minor in character.
Within the definitional framework established by McCoy, we conclude, as did the trial court, that that plaintiff's employment as a keypunch operator, which caused her to sit in a fixed position for extended periods of time with her neck in a hyperextended position making repetitive strokes on a keyboard, provided a continual strain on her neck which cumulatively combined either to cause her cervical condition, or to aggravate a pre-existing condition resulting in her disability. As such she suffered an accident related to her employment and is entitled to compensation under the act.
The authority appellant cites as support for a contrary result does not persuade us. Appellant likens this situation to the one *83 presented in Green v. New Orleans Public Service Company, Inc., supra. In Green, a New Orleans city bus driver who had a pre-existing degenerative neck condition claimed that turning his head back and forth while driving his bus caused him to have neck pain and therefore was an aggravation of a pre-existing condition under the Louisiana worker's compensation act. In Green, the court simply found that there was no work related accident. Plaintiff's pain was found to be caused by his severe, progressive degenerative spinal disease and was unrelated to his turning his head while driving his bus.
Defendant also cites and relies upon the following jurisprudence for support of its position that to be compensable as an aggravation, the accident must cause a change or worsening in the worker's pre-existing condition rather than simply a recurrence of symptoms: Henry v. Allied Industrial Services, Inc. 447 So.2d 1204 (La.App. 5th Cir.1984); Hopson v. Garner Brothers Masonry Contractors, Inc. 459 So.2d 577 (La.App.3d Cir.1984), writ denied 462 So.2d 192 (La.1984); Walton v. Normandy Village Homes Association, Inc., 460 So.2d 1166 (La.App.2d Cir.1984), writ granted, 462 So.2d 1254 (La.1985). However, we have determined that these cases are of no benefit to defendant. The lack of a causal connection between a work related fall and renal failure defeated plaintiff's claim for worker's compensation benefits in Walton. Likewise, in Hopson, plaintiff's long term inability to work was determined to have resulted from a subsequent automobile accident rather than plaintiff's job as a masonry helper. In Henry, the Fifth Circuit concluded that plaintiff, who had a predisposition for developing contact dermatitis, was entitled to compensation benefits, but reduced the award from one hundred to ten weeks.
In each of these instances except for Henry, compensation benefits were denied because of plaintiff's failure to demonstrate a causal relation between his disability and a work related injury. In Green, and arguably Hopson, no work related accident was shown. In Henry, benefits were awarded.
In the case at bar, plaintiff was found to have suffered a work related accident as defined by McCoy by the repeated performance of her job task. The trial court found that this "accident" either caused Mrs. Malloy's cervical condition or aggravated a pre-existing injury.
The determination of whether there is a causal relationship between a claimant's disability and his employment is a question of fact. Walton v. Normandy Village Homes Association, supra; Delco v. Heritage Manor Nursing Home, 441 So.2d 309 (La.App. 3d Cir.1983), writ denied, 443 So.2d 1123 (La.1984). The factual findings of the trial court as to whether a disability is related to a work related accident are entitled to great weight on appellate review. Martin v. H.B. Zachry Company, 424 So.2d 1002 (La.1982).
The trial court's finding of a causal relationship between plaintiff's disabling pain and her job activity is supported in the record. Dr. Ramos testified that the position Mrs. Malloy had to assume in order to perform her job caused her neck to be placed in a slightly hyperextended position. Dr. Ramos stated that in a patient with a tendency to develop neck problems this activity will aggravate, if not create the problem. The doctor opined that there was a relationship of cause and effect between Mrs. Malloy's occupational activity and her condition, since a neck position of hyperextension lateralization will cause chronic cervical strain. Considering this evidence, we discern no clear error in the trial court's finding of a causal connection between plaintiff's keypunching activity and her disability.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.