505 So.2d 987 (1987)
Betty HALE, Plaintiff-Appellee,
v.
PINECREST STATE SCHOOL, et al., Defendants-Appellants.
No. 85-887.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Rehearing Denied May 5, 1987.
Writs Denied June 12, 1987.
Dissenting Opinion July 15, 1987.
*988 Stafford, Stewart and Potter, Paul Boudreaux, Alexandria, for defendant-appellant.
Fuhrer and Flournoy, George Flournoy, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, KNOLL and BROYLES [*], JJ.
KNOLL, Judge.
Pinecrest State School (hereafter Pinecrest) appeals the trial court's judgment awarding Betty Hale worker's compensation disability benefits, medical benefits, penalties and attorney's fees for her total and permanent disability resulting from her employment with Pinecrest. Pinecrest contends the trial court erred: (1) in refusing to allow the introduction of evidence regarding Hale's true reason for taking an indefinite leave of absence; (2) in granting Hale permanent and total disability benefits when she was unable to prove a job-related accident or injury; and (3) in awarding penalties and attorney's fees when Pinecrest was not arbitrary, capricious or unreasonable in its refusal to pay benefits, or in the alternative, if attorney's fees were appropriate, the trial court's award was excessive. Hale answered the appeal, *989 seeking a $1,500 increase in attorney's fees due to the appeal. We affirm in part and reverse in part.

FACTS
The learned trial judge handed down written reasons for judgment setting forth the facts of this case, which we incorporate herein:
"This is an action for worker's compensation. Plaintiff, Betty Hale, instituted suit for total and permanent disability benefits, reimbursement of medical and medical travel expenses, and penalties and attorney's fees against her former employer, Pinecrest State School. Pinecrest is self-insured; however, its workmen's compensation claims are investigated and administered by the office of risk management. The group health insurer for the State intervened to recover certain medical expenses paid on behalf of plaintiff should she be successful in her compensation claim.
Plaintiff, Ms. Hale, alleged an accidental injury to her neck and cervical spine on June 19, 1983, at which time she was employed as a payroll supervisor at Pinecrest State School. Mrs. Hale is the supervisor of the payroll department at Pinecrest State School and has been employed by Pinecrest for 17½ years. Prior to being employed at Pinecrest State School, Mrs. Hale worked at Allen Wallpaper and Glass Co. where she served in a clerical capacity doing bookkeeping, sales and light typing. She remained with Allen Wallpaper for 18 years. The last 5 years she served in the capacity as manager of the paint department. Mrs. Hale then entered the State Civil Service in 1966 and was placed at the Pinecrest State School in charge of payroll. Her responsibilities included supervision of four employees, meeting of payroll deadlines, checking employees timesheets, preparing insurance reports and reviewing invoices for group insurance. In addition, Ms. Hale was required to use the telephone in which she placed between her ear and neck and shoulder to allow her to look at invoices and computer printouts that were on top of her desk. Ms. Hale was required to work overtime and on weekends to meet payroll deadlines.
In summary, the evidence shows that Ms. Hale's duties as payroll supervisor required her frequently to turn her head from side to side, glancing at the payroll ledgers and required her to sit with her neck in a cocked position for long periods of time, whether talking on the telephone and/or reviewing insurance policies, payroll ledgers, timesheets, etc.
Ms. Hale testified that on Sunday, June 19, 1983, while working on the group insurance plans, she felt a severe pain in the shoulder area down into the arm. She did not report to work the next day due to the pain in her shoulder. On June 21, 1983, she reported to work and stated that the pain intensified to such an extent she was not able to work the whole day and called an orthopaedic, Dr. Douglas Gamburg, who saw her that same day.

Dr. Gamburg stated in deposition that plaintiff complained of pain in the left scapular. He stated that plaintiff had noticed this pain approximately one month prior to her visit. Dr. Gamburg was of the opinion that plaintiff had a C7 root disfunction probably related to a herniated disc at C6 on the left side. Dr. Gamburg stated that they did not discuss cause of the pain, however, he did say that placing the head and neck in an awkward position for prolonged periods of time can pre-dispose one of disc rupture. When Dr. Gamburg was asked by plaintiff's counsel whether turning the head, cocking the neck over the phone for long periods of time, and looking at ledgers many hours of the day can pre-dispose a ruptured disc, Dr. Gamburg answered that such activities would tend to put a lot of wear and tear on her neck, and he thought it would be a pre-disposing factor. Dr. Gamburg suggested to plaintiff that she see a neurosurgeon as soon as possible. *990 On July 13, 1983, plaintiff saw Dr. Charles Robert Neblett, a neuro-surgeon in Houston, Texas. Dr. Neblett performed a myelogram which showed a pinched nerve by the C6, 7 nerve root area. Surgery revealed a ruptured disc and a bone spur. Dr. Neblett stated that in his opinion it was more likely than not that plaintiff's work-related activities, that is, working over 40 hours per week, constantly turning of the head and shoulders, and doing such things as looking down before her books, comparing one book to another, and turning of the head from extreme left to center to extreme right and back and forth, caused the ruptured cervical disc. Dr. Neblett further stated that in his opinion, this plaintiff was not expected to return to any type work. However, on August 24, 1983, Dr. Neblett did allow plaintiff to return to her regular work duties due to her physical signs of improvement and neurological stabilization. Dr. Neblett noted that the plaintiff continued to need additional time for adequate healing to the cervical area and that she was to gradually increase her activities over the next five weeks. Over these five weeks, plaintiff's condition did not improve to a status in which the doctor thought she could perform her regular work duties. Thereupon, Dr. Neblett restricted those work activities that would put a long-term strain on her neck. He specified that he would not want plaintiff to do repetitive activity with the arms extended in front of her and was apprehensive that she could make an 8-hour work day.

Other evidence revealed that plaintiff spent some time reading books, magazines, painting and charcoal drawing, taking walks, and working in the garden. Dr. Neblett stated that these activities could relate to the ruptured disc, however, it was his opinion that it was very unlikely in comparison with the activities that she did in her work responsibility. Dr. Neblett did state that he could not determine at what point and time the disc would have ruptured when plaintiff became disabled or whether plaintiff became disabled as a result of an injury at work, home or no injury at all." (Deposition citations omitted.)
The trial court found Hale to be totally and permanently disabled, the disability having manifested on June 21, 1983, thereby entitling her to disability benefits of $204 per week. The court further awarded Hale $11,780.17 medical and medical travel expenses, $8,500 attorney's fees, and a 12% penalty on all sums due for disability benefits, medical expenses, and medical travel expenses. Finally, the court entered a judgment of $8,386.08 in favor of the intervenor, Board of Trustees, State Employees Group Benefits Program, for medical expenses it paid on behalf of Hale.

DISABILITY
The plaintiff-employee in a worker's compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Celestin v. Fireman's Fund Ins. Co., 430 So.2d 1263 (La.App. 1st Cir. 1983); Allor v. Belden Corp., 393 So.2d 1233 (La.1981). Furthermore, medical testimony must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events, in order to judicially determine probability. Celestin, supra; Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
A worker's compensation claimant is considered totally disabled if he or she is unable to engage in any gainful employment without suffering substantial pain. LSA-R.S. 23:1221; Chiasson v. Lafourche Parish Council, 449 So.2d 110 (La.App. 1st Cir.1984). A claimant also is considered *991 totally disabled under the odd-lot doctrine if he is unable, because of physical impairment and other factors, such as mental capacity, education and training, to perform any services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. Chiasson, supra; Lattin v. Hica Corporation, 395 So.2d 690 (La.1981).
On appellate review, the trial court's factual findings of work-connected disability are entitled to great weight. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979). The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Crump, supra; Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978).
In the present case, Pinecrest contends the trial court erred in finding Hale totally and permanently disabled because Hale could neither pinpoint an "accident" nor attribute her work as the cause of her physical problems. We disagree. Pinecrest emphasizes that: (1) Hale had difficulty determining the exact date of her injury; and (2) Hale did not file an initial report of injury until December 9, 1983, approximately six months after the alleged injury. The trial court carefully considered the totality of the evidence, medical and lay, in determining Hale's disability. In its written reasons for judgment, the court stated:
"Dr. Neblett, the plaintiff's treating physician, was of the opinion that the disability was work-related. Dr. Gamburg, who examined the patient one time on June 21, 1983, did not discuss cause with the plaintiff; however, he stated that the herniated disc was due to some degenerative change. He also stated that placing the head and neck in awkward positions for prolonged periods of time can pre-dispose one to disc rupture. Thus, Ms. Hale suffered an accidental injury as that term is used in our Workman's Compensation Act.
In the present case, the Court is of the opinion that there is sufficient evidence of a work-related accident that occurred on or about July 19, 1983, to bring plaintiff within the coverage afforded by the Compensation Act. This determination is based upon the preponderance of evidence and evidence adduced at trial including the medical depositions, which showed that the work duties of Mrs. Hale put constant strain on her neck for the past seventeen years which contributed to her ruptured, cervical disc.
* * * * * *
A careful review of the medical evidence and lay testimony establishes that plaintiff is totally disabled. Dr. Neblett's deposition indicated that he expected Mrs. Hale's injury to place a permanent restriction on her bookkeeping type work duties. It was Dr. Neblett's opinion that there was not any type of regular work that plaintiff could do at this time and did not expect her to return to any type of work. The plaintiff testified that she returned back to work on October 1, 1983, and worked until November 1, 1983. She stated that she would work one day and the next be in such pain that she would not report to work. She further testified that she was taking pain pills for the pain in her neck. Plaintiff testified that her neck is still stiff when trying to turn and is painful when she tilts her head in a downward position.

Testimony by plaintiff's co-workers established that plaintiff's job duties had been lessened when she returned to work in October 1983. A speaker telephone was installed for Mrs. Hale's convenience by her employer. The defendant introduced the deposition of Dr. Craig Feldbaum, an expert in psychology, specializing in the fields of vocational and rehabilitation psychology. Dr. Feldbaum stated that in terms of the private employment sector, Mrs. Hale would be at a competitive disadvantage, having undergone certain surgeries particularly to the extent that *992 physicial [sic] restrictions are placed on this woman which might require an employer to have to accomodate [sic] her, either in terms of scheduling or in terms of job description. Dr. Feldbaum's recommendation, in light of plaintiff's many year history in State Civil Service and the amount of money she is making, was that `she should remain where she is.' This is precisely the very type work that Dr. Neblett stated plaintiff was physically unable to do. Therefore, it is concluded that there is substantial evidence in the record to support the determination that plaintiff was suffering disabling pain when she returned to work in October, 1983, and at the time of trial." (Deposition citations omitted.)

We find the medical evidence and lay testimony supports the trial court's conclusions both as to causation and disability. On the question of causation, we find the case of Malloy v. A T & T Consumer Products, 475 So.2d 80 (La.App. 2nd Cir. 1985) apposite to the case sub judice. In the Malloy case our Brethern of the Second Circuit concluded that the plaintiff's employment therein as a keypunch operator, which caused her to sit in a fixed position for extended periods of time with her neck in a hyperextended position making repetitive strokes on a keyboard, provided a continual strain on her neck which cumulatively combined either to cause her cervical condition or to aggravate a preexisting condition resulting in her disability. In Malloy, the Court concluded that the plaintiff therein under the facts stated, suffered an accident related to her employment which caused her to be entitled to worker's compensation. See also Gales v. Great Atl. & Pac. Tea Co., 342 So.2d 241 (La.App. 4th Cir.1977), writ refused, 343 So.2d 1077 (La.1977).
Concerning the plaintiff's disability in this case, in view of her obviously limited physical disabilities due to the condition of her neck, we cannot say that the trial court was clearly wrong in finding her totally and permanently disabled.

PENALTIES AND ATTORNEY'S FEES
The trial court awarded Hale attorney's fees of $8,500 and assessed a 12% penalty against Pinecrest. In order to recover these particular items of damage, the plaintiff must prove by a preponderance of the evidence that the employer's decision to discontinue worker's compensation payments was unreasonable and arbitrary. Eschete v. Gulf South Beverages, 442 So.2d 556 (La.App. 1st Cir.1983). It is important to note that LSA-R.S. 23:1201.2 is penal in nature, and as such, Louisiana courts have repeatedly held that it must be strictly construed and that the employer cannot be penalized for taking close factual questions to court for resolution and for relying on valid defenses. Eschete, supra; Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982). Penalties and attorney's fees should be imposed only in those instances in which the facts negate probable cause for non-payment. Crawford v. Al Smith P. & H. Service, Inc., 352 So.2d 669 (La.1977).
In the instant case, the trial court awarded Hale penalties and attorney's fees on the basis of Dr. Neblett's letter to the Office of Risk Management, which provided in pertinent part:
"In specific answer to your question concerning the relationship of a ruptured cervical disc with constant turning of the head and shoulder for balancing of the phone, etc., this certainly can occur. It is not always possible to further delineate the exact cause and effect of a ruptured disc but certainly these type and positioning can result in disc degeneration and subsequent herniation."
Pinecrest contends it denied Hale benefits because: (1) the injury was not work-related; and (2) on several medical expense reimbursement forms, Hale indicated that it was unknown how the accident occurred and that she did not intend to file a claim for worker's compensation benefits.
We note that Dr. Neblett could not say definitely that Hale's employment caused the ruptured cervical disc in her neck. The trial court's finding of disability is based *993 largely on Hale's testimony as well as the medical testimony. Not only was this a very unusual case in that the injury resulted from prolonged use of the telephone, but there was a serious factual question as to whether or not Hale's condition was caused by her employment. Therefore, we cannot say that Pinecrest was arbitrary and capricious in its failure to make payments to Hale, and we cannot penalize Pinecrest for litigating a close factual question. Accordingly, we reverse that part of the judgment which imposes penalties and awards attorney's fees under R.S. 23:1201.2.
In answer to the appeal, Hale seeks $1500 attorney's fees for services rendered on appeal. In view of the circumstances, including the fact that the worker's compensation award was reversed in part on appeal, claimant's request for an increase in attorney's fees to cover services rendered on appeal is hereby denied. Rachal v. Highlands Ins. Co., 355 So.2d 1355 (La. App. 3rd Cir.1978), writ denied, 358 So.2d 645 (La.1978).

INTRODUCTION OF EVIDENCE
Pinecrest contends the trial court erred in refusing to allow the introduction of evidence regarding Hale's dissatisfication with the job, which was her true reason for taking an indefinite leave of absence. We disagree. The trial court allowed the testimony as a proffer of proof. Admissibility of evidence is a matter largely within the discretion of the trial court. After reviewing the record, including the proffered testimony, we find no abuse of discretion in the trial court's ruling on admissibility.

DECREE
For the foregoing reasons, we reverse the judgment of the trial court insofar as it imposes a 12% penalty on Pinecrest State School and awards Betty Hale attorney's fees of $8,500. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Pinecrest State School.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
BROYLES, J. Pro Tem., dissents and will assign written reasons.
TED B. BROYLES, Judge Pro Tem., dissenting.
The plaintiff failed to show, by a preponderance of the evidence, that the disability was caused by an accident arising out of and in the course of her employment.
This ruling is an inappropriately liberal extension of the decisions of Gales v. Great Atlantic & Pacific Tea Co., 342 So.2d 241 (La.App. 4th Cir.1977) and Malloy v. AT&T Consumer Products, 475 So.2d 80 (La.App. 2nd Cir.1985). The facts presented are more apposite to those found in Green v. New Orleans Public Service, Inc., 413 So.2d 257 (La.App. 4th Cir. 1982).
If the trend continues the employer will become the "absolute insurer", as mentioned in Green, supra, (p. 260).
I respectfully dissent.
NOTES
[*] Judge Ted R. Broyles of the Thirtieth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.