442 So.2d 556 (1983)
Bobby ESCHETE
v.
GULF SOUTH BEVERAGES.
No. 83 CA 0106.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*557 Leslie J. Clement, Jr., Thibodaux, for plaintiff-appellee Bobby Eschete.
*558 Huntington Downer, Jr., Houma, for defendant-appellant Gulf South Beverages.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
This is a worker's compensation suit filed by plaintiff-appellee, Bobby Eschete, against defendant-appellant, Gulf South Beverages, claiming total and permanent disability as a result of back injuries allegedly sustained in two job related accidents, for medical expenses, and for penalties and attorney's fees due to the failure of defendant to timely pay compensation benefits.
The trial court found as a matter of fact that plaintiff has been temporarily totally disabled since October 28, 1980, and that plaintiff was entitled to the appropriate benefits since that date and throughout plaintiff's disability subject to a six-week credit when plaintiff had been gainfully employed. Secondly, the court ordered defendant to reimburse plaintiff for all medical and travel expenses expended through the date of the trial and for any future expenses incurred during the disability. Finally, the defendant was cast for all costs.
From the award the defendant has appealed alleging four specifications of error. Two of the specifications relate simply to the trial court's decision in favor of Eschete, and as such, will be addressed together. Of the other two, one asserts the trial judge erred when he decided the case from the bench without reading the depositions submitted as exhibits; the other argues that the district court erred in not finding that the cause of action stemming from one of the accidents had prescribed. Plaintiff answered the appeal seeking penalties and attorney's fees and an increase in the award from total but temporary to total and permanent disability.
The record reflects that plaintiff, a twenty-eight year old husband and father with a twelfth grade education and no special training, worked for the defendant as a delivery man. Plaintiff's responsibilities consisted of delivering cases and cartons of soft drinks to various business establishments in Southeastern Louisiana. The job required frequent bending, stooping and lifting.
In February of 1980, plaintiff was delivering soft drinks to a supermarket in Galliano. After climbing high up on his truck, plaintiff slipped and fell landing directly on his tailbone. Unable to sit down but for short periods of time, plaintiff was paid worker's compensation until being released to go back to work in late July, 1980.
Subsequent to this point, on or around October 28, 1980, plaintiff was once again on the job delivering bottles for the defendant when he suffered a second accident. While bending down to replace soft drink bottles he had knocked over, plaintiff came in contact with a fire extinguisher, apparently unhooking it from the wall. Before the extinguisher fell to the ground, it struck Eschete square in the middle of his back. The following day plaintiff began seeing a Dr. Neil Maki for this second injury. Though bruised and sore, plaintiff returned to light duty work between the day of the accident and mid-December when he was forced to stop because of pain. Plaintiff was paid compensation for the period beginning December 30, 1980, and extending through January 11, 1981. Yet, by the end of February, plaintiff was back on the job performing the same work he had prior to the accident. However, by the middle of March, the pain in plaintiff's back grew so intense he had to stop work completely. Except for a few weeks later in the year when plaintiff aided a friend doing some carpentry work (but had to stop because of pain), plaintiff has not worked since March of 1981.
Defendant asserts that the evidence simply does not support the contention that plaintiff is totally and temporarily disabled. On the other hand, plaintiff argues that when the evidence is considered in light of the applicable law, plaintiff should receive benefits for total and permanent disability. Before we consider this particular issue, we *559 must first address a motion in opposition to plaintiff's supplemental answer to defendant's appeal.
The record reflects that plaintiff filed a timely answer to defendant's appeal seeking penalties and attorney's fees. Subsequent to this time, and more than 15 days after the passage of the return day, plaintiff filed a supplemental answer to the appeal. In addition to the relief sought in his original answer, the supplemental answer requests that the lower court's judgment be modified in plaintiff's favor by declaring Eschete totally and permanently disabled as opposed to the total but temporary appellation ascribed by the district court. Although the supplemental answer was filed with leave of court, the defendant has filed a motion to have plaintiff's supplemental answer dismissed as untimely.
La.C.C.P. art. 2133 provides as follows:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.
Defendant argues that the supplemental answer should be dismissed as untimely because it was filed more than 15 days after the return date. He cites several cases supporting the proposition that where an answer to an appeal is untimely, it cannot be considered by the appellate court. These cases, however, are factually distinguishable from the present case.
While it is generally true that where an answer to an appeal is filed more than 15 days after the record is lodged with the appellate court it will be considered as untimely, nevertheless, we think fairness requires the consideration of plaintiff's supplemental answer in this case. First, it must be remembered that the appellee filed his original answer timely, thereby placing defendant on notice that plaintiff was not satisfied with at least some portions of the trial court's judgment. Second, appellee's supplemental answer does not raise any issue that appellant has not been aware of, or has not prepared for, since the inception of this case. Third, since the supplemental answer was filed in March of 1983, and this case was not placed on the docket until October of 1983, defendant has had ample opportunity to address the issue raised in appellee's supplemental answer. Thus, we think that where an appellee timely files an answer to an appeal, later supplements that answer more than 15 days after the return date with leave of court, but raises no new issues and affords an appellant ample time within which to respond to the supplemental answer, then pursuant to the powers vested in the court by La.C.C.P. art. 2164, it is both just and efficient to consider the supplemental answer.
In this respect, it is interesting to note that under the old Code of Practice of 1870, article 890, an appellee was given up until three days before the date fixed for argument of the case to file his answer. The theory being, of course, that any points raised in the answer could be addressed at oral argument. (It also had the beneficial effect of placing more emphasis on oral argument than most attorneys do today). Now, the court is not unmindful of the explosion in the number of cases in recent years, and the resultant time pressures on many attorneys, and we can see the raison d'etre for the changes in the new code, nevertheless, we think that the old practice can serve as some guidance for the new, *560 and as such, we do not think that the appellant has been prejudiced in any way. Accordingly, appellant's motion to dismiss appellee's supplemental answer is denied, and the court must decide whether plaintiff should receive total and permanent benefits as opposed to total and temporary benefits awarded by the trial judge.
The trial judge summed up the evidence very succinctly when giving his reasons for judgment:
I can understand that the reason why compensation payments could have been stopped as a result of the medical reports which were issued in this case, but I also know that doctors are not infallible. In fact this is a classic case where you might have three or four doctors saying one thing and two or three doctors saying something else. But that does not give the claimant any relief. The Court is of the opinion that on the date of October 28, 1980, the plaintiff suffered an injury while in the course and scope of his employment. The Court further finds that as a result of this accident the plaintiff did sincerely try to go back to work. That he was unable to perform the duties of the job with to which he had been employed to do, that he continuously tried until he could no longer stand the pain. The Court feels very strongly that Mr. Bobby Eschete and his wife told it as it is to the Court. The man did suffer an injury that did cause some disability and later on caused anxiety and discomfort, both physically and mentally. That as a result of the injury he is presently totally disabled.
It is the trial judge's responsibility to examine the totality of the evidence, both medical and lay, in making a determination of whether to grant an award of worker's compensation benefits for disability. Simpson v. S.S. Kresge Company, 389 So.2d 65 (La.1980). The trial court's decision should not be overturned absent a showing of a clear abuse of discretion. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). It has been held that this standard of review applies to the lower court's determination on the question of disability. Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263 (La.App. 1st Cir.1981), writ denied, 409 So.2d 615 (La. 1981).
We have thoroughly reviewed the numerous depositions and medical reports in this case and we have no hesitation in agreeing with the trial judge's conclusion that the plaintiff suffered a disabling injury due to the October 28, 1980, accident and that he can no longer work without substantial pain. Our review of the record conclusively establishes that the trial court's decision was correct and we refuse to disturb it on appeal. When the totality of the evidence is examined in this case, one comes away with the unmistakable conclusion that the plaintiff has suffered a disabling injury, and that the disability was continuing at the time of the trial.
When Dr. Pete Rhymes, the orthopedic surgeon who treated plaintiff for his first injury, was asked what effect a purported pre-existing spondylolisthesis condition Eschete suffered from might have, he replied:
A. I would recommend ... that he not be hired for any occupation which requires any lifting or straining of the back.
. . . . .
Q. I think what you're saying is that he would not be able to keep up with an able bodied worker?
A. Probably not....
. . . . .
Q. Doctor, I get the impression from you (sic) letter that Bobby will be limited in obtaining a job involving work of a manual nature?
A. Yes, sir.
Q. And I further get the opinion that were he applying for a job where there were other applicants who did not have this condition, he would be at a complete disadvantage with these other people?
A. That's correct, sir.
*561 It is significant to note that prior to the accidents suffered by plaintiff, the depositions reveal that the spondylolisthesis condition was asymptomatic.
Dr. Neil Maki, another orthopedic surgeon, who treated plaintiff for the October accident, stated in his deposition that after seeing Eschete in November and December of 1980, he told plaintiff to avoid climbing, or lifting over thirty pounds, and any trauma to his back whatsoever. Additionally, Dr. John Jackson, a Houma neurosurgeon who examined plaintiff at the request of Dr. Joseph Powell, plaintiff's family physician, testified that while he did not see any spondylolisthesis, nevertheless, plaintiff may have some protrusion of his disc at the L5 level. Dr. Jackson was of the opinion that further testing and treatment was required and that plaintiff was sick "one way or the other. And I think he needs to get treated before he's going to get well." Finally, there is the deposition of Dr. Powell. Because he has been treating plaintiff since he was seven years old, through perhaps fifty office visits, Dr. Powell was probably in the best position to judge Eschete's overall health. In this regard, Dr. Powell states:
A.... I confirmed in my mind that he in truth had some problem, had problems with his back. He had the spasm, limited motion, the positive straight leg raising bilaterally ...
In response to plaintiff's counsel's question as to Eschete's ability to work, Dr. Powell replies:
A. I don't think Bobby can work right now. I've forgotten how many times he's gone back and tried to work, at least two or three times, a work effort, and he's not been able to do it on the job.... So I don't think that Bobby can do any type of gainful employment.
Thus, the evidence in the record is overwhelming that plaintiff is disabled and was so at the time of the trial. Moreover, there has never been any opinion as to when plaintiff may be diagnosed healthy. Plaintiff simply is unable to work in any gainful employment without substantial pain, and the trial court's decision in this respect is clearly supported by the evidence.
However, the trial court was incorrect in awarding only temporary benefits. In Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985, 987 (La.1976) Justice Tate wrote as follows:
A judgment for total permanent disability should be awarded when the claimant is shown to be totally disabled at the time of trial and the duration of such disability is indefinite or the evidence does not clearly indicate its duration. Montgomery v. Delta Concrete Products Co. Inc., 290 So.2d 769 (La. App. 1st Cir.1974); Blazier v. Georgia-Pacific Corporation, 301 So.2d 701 (La. App. 3d Cir.1974); Deville v. Travelers Insurance Company, 176 So.2d 824 (La. App. 3d Cir.1965); Harris v. Argonaut Insurance Company, 142 So.2d 501 (La. App. 2d Cir.1962); Louisiana compensation law has accepted this as established principle since at least Connell v. Gilliland Oil Company, 2 La.App. 435 (2d Cir.1925). Malone, Louisiana Workmen's Compensation Law Section 280 (1951).
The evidence in this case did not indicate the duration of plaintiff's disability, and thus the trial court was in error in awarding only temporary benefits even if the court felt that there was a possibility the disability might lessen over the course of time. As such, the judgment will be modified to increase plaintiff's benefits to those of total and permanent disability. Accord Glover v. Southern Pipe & Supply Company, 408 So.2d 352 (La.App. 4th Cir.1981), writ denied 412 So.2d 86 (La.1982).
In another specification of error the defendant alleges that the trial judge erred when he rendered a decision from the bench without reading all of the depositions entered into evidence. After both plaintiff and defendant had rested their cases, the court allowed each side to present closing arguments. Subsequent to this time the court issued oral reasons for judgment which provided, in part, as follows:

*562 The Court has not had the benefit of reading the depositions of all of the doctors. The Court has had the use of medical statements and doctor's statements and as a matter of practice and I think both counsel agree that the depositions of these doctors usually is a statement read into a deposition, if you will, reading from their medical reports and they follow their medical reports to a "T". So it's a repetition and that's why a lot of times I prevail on the lawyers to get medical reports from the doctors and try to save the cost of depositions.
While we do not sanction the rendering of a decision without reading depositions where there is a medical report in every case, we take pains to note that the above statement of the trial judge was totally accurate. After reading the medical reports and depositions, it is obvious that in this case most of the doctor's deposition testimony was exactly the same as the medical reports. Indeed, some of the answers to questions in the depositions are taken from the medical reports word for word. Thus, to the extent that a large portion of the trial judge's responsibility is to weigh the relevant evidence and then come to a conclusion based on that evidence, such responsibility was carried out properly and effectively in this case and the defendant's assertions otherwise are rejected.
Finally, defendant raises the issue of prescription in his brief as another specification of error. Although defendant's brief is confusing on this matter, apparently defendant is alleging that the cause of action based upon the February, 1980, accident has prescribed. Compensation was paid to plaintiff because of this accident until July 30, 1980. Plaintiff's supplemental and amending petition alleging this accident as a cause of action was not filed until January 13, 1982, more than a year after the compensation payments ceased. However, defendant's argument cannot avail for two reasons. First defendant did not file a formal pleading raising this exception at either the trial or appellate level, rather he merely raises the issue in his brief. It is well settled law that although an exception of prescription may be filed for the first time in an appellate court, it must be presented in a formal pleading and not by brief alone. The peremptory exception of prescription, regardless of any probable merit, cannot be injected as an issue in the case by brief or oral argument. La.C.C.P. articles 927 and 2163; State, Through Dept. of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir.1979); Motor Machine and Supply Co. v. Delilah Towing Co., Inc., 321 So.2d 896 (La.App. 1st Cir.1975), writ refused 325 So.2d 279 (La. 1976). Secondly, defendant's argument on the prescription question is moot because the record indicates that the trial judge found plaintiff had fully recovered from the February, 1980, accident and that the cause of plaintiff's present problems result from the October, 1980, accident exclusively. Thus, the judgment would still stand even if we held that the allegation of prescription was meritorious. In any case, the question of prescription is not before the court and defendant's specification of error based thereon is rejected.
In plaintiff's original answer to defendant's appeal he asks this court to reverse the trial court's refusal to award plaintiff penalties and attorney's fees as permitted by La.R.S. 23:1201.2. In order to recover these particular items of damage, the plaintiff must prove by a preponderance of the evidence that the employer's decision to discontinue worker's compensation payments was unreasonable and arbitrary. Also, in order to reverse the trial judge's determination on this issue, we must find that the court committed manifest error and abused the much discretion afforded him. Arceneaux, 365 So.2d at 1333. Furthermore, it is important to note that La.R.S. 23:1201.2 is penal in nature, and as such, Louisiana courts have repeatedly held that it must be strictly construed and that the employer cannot be penalized for taking close factual questions to court for resolution and for relying on valid defenses. Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir. 1982). At trial, the claims adjuster for the *563 defendant testified that benefits were stopped in January of 1981 because of the medical report of Dr. Maki, plaintiff's treating physician for the second injury. In Dr. Maki's deposition he stated that when Eschete came to see him on January 9, 1981, plaintiff was not complaining, that he was much improved, and that he had a normal examination. When asked by defense counsel whether he released plaintiff for work at that time, Dr. Maki replied in the affirmative. Defendant's adjuster also testified that compensation was not resumed at a later date based, in part, upon the medical report of Dr. Levy, a neurosurgeon in New Orleans. This report, dated March 14, 1982, states clearly, "From the neurological standpoint, I see no reason why this man could not return to his usual and customary occupation at this time." It is significant to note that Dr. Levy was aware that plaintiff's usual and customary occupation required the loading and unloading of a soft-drink truck. Finally, as evidence of the defendant's good faith and reasonable behavior in dealing with Eschete, the court recalls the comments of the trial judge when rendering his decision from the bench. As noted above, the judge states, "In fact this is a classic case where you might have three or four doctors saying one thing and two or three doctors saying something else." Thus, we think there existed close factual questions in this case and that the defendant had the benefit of valid reasons to stop plaintiff's benefits. Accordingly, it is our opinion that the trial judge did not abuse his discretion in refusing to award penalties and attorney's fees to plaintiff. See Henson v. Handee Corporation, 421 So.2d 1134 (La.App. 2d Cir.1982).
For the reasons assigned above, the trial court's decision will be modified and amended to award plaintiff total and permanent disability benefits, in all other respects the opinion will be affirmed. Defendant is to pay all costs.
AMENDED AND AFFIRMED.